CHARTER BUILDERS, Appellant,

v.

Ronald E. DURHAM and Commercial Drywall, Appellees.

No. 05–83–00812–CV.

Court of Appeals of Texas, Dallas.

Nov. 7, 1984.

Rehearing Denied Dec. 10, 1985.

John H. Martin, Jr., Thompson & Knight, Dallas, for appellant.

Tom J. Stollenwerck, Sidney H. Davis, Jr., Touchstone, Bernays, Johnston, Beall & Smith, James K. Campbell, DeHay & Blanchard, Dallas, for appellees.

Before STEPHENS, SPARLING and ROWE, JJ.

STEPHENS, Justice.

Defendant/appellant, Charter Builders, appeals a judgment denying indemnity or contribution from third-party defendant, Commercial Drywall. Charter Builders contends that (1) the court erred in denying contribution; (2) the evidence was legally or factually insufficient to support the jury finding that the plaintiff, Durham, was an employee of Commercial Drywall; (3) the definition of "employee" in the jury charge was improper; and (4) Commercial Drywall contractually agreed to indemnify and hold harmless Charter Builders. We disagree and affirm.

Durham filed suit against Charter Builders, a general contractor, seeking recovery

of damages for personal injuries sustained while working at a Charter Builders construction site. The Texas Employers' Insurance Association (TEIA), the workers' compensation carrier for subcontractors Commercial Drywall and Building Interiors, intervened to recoup payment of workers' compensation and medical expenses. Pursuant to TEX.R.CIV.P. 38, Charter Builders impleaded Commercial Drywall, alleging that Commercial Drywall was negligent and praying for contribution or indemnity. Commercial Drywall generally denied the allegations and specifically alleged that it was Durham's employer at the time of the occurrence, that it had in full force and effect a workers' compensation insurance policy issued by the TEIA, that Durham had filed a compensation claim, and that Durham's exclusive remedy against Commercial Drywall was under the Workers' Compensation Act.

In answer to special issues, the jury found that the negligence of Durham, Charter Builders, and Commercial Drywall proximately caused the accident and apportioned the negligence as follows: 5% to Durham; 55% to Charter Builders; and 40% to Commercial Drywall. The jury additionally found that Durham was an employee of Commercial Drywall and that Charter Builders was guilty of gross negligence.

The judgment ordered Charter Builders to pay $532,001.66 to Durham and the TEIA, representing 55% of the compensatory damages found by the jury and 95% of the exemplary damages, and denied Charter Builders any recovery on its third-party claim against Commercial Drywall.

### Contribution

■ Charter Builders urges that, as a joint tortfeasor, it is entitled to contribution from Commercial Drywall. We disagree. First, Charter Builders did not in its brief provide argument or authorities to support its right to contribution nor request contri-

bution in its conclusion and prayer. Points of error asserted on appeal but not briefed are waived. *Ozuna v. Dyer Fruit Box Manufacturing Co.*, 606 S.W.2d 334, 337 (Tex.Civ.App.—Tyler 1980, no writ); *North Harris County Junior College District v. Fleetwood Construction Co.*, 604 S.W.2d 247, 255 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.). Furthermore, the "nature of the relief sought on appeal should be clearly stated." TEX.R.CIV.P. 418(f).

■ Secondly, to obtain contribution, there must be (1) a common liability on the part of negligent tortfeasors; (2) a compulsory discharge of the liability; and (3) one party bearing an unequal portion of the common burden. TEX.REV.CIV.STAT. ANN. art. 2212 (Vernon 1971); *Houston Lighting & Power Co. v. Allen & Coon Construction Co.*, 634 S.W.2d 875, 878 (Tex.App.—Beaumont 1982, no writ); *Lubbock Manufacturing Co. v. International Harvester Co.*, 584 S.W.2d 908, 911 (Tex. Civ.App.—Dallas 1979, writ ref'd n.r.e.); Comment, *Contribution Among Joint Tortfeasors*, 44 Tex.L.Rev. 326, 330 (1965). The judgment ordered Charter Builders to pay only the portion of compensatory and exemplary damages that corresponded to its proportionate contribution to the injury. Since Charter Builders did not pay more than its proportionate share of the liability, it may not obtain contribution.

■ Thirdly, Charter Builders cannot obtain contribution for any portion of the exemplary damages award. The award was based on a finding against Charter Builders of gross negligence. Absent common liability, no right to contribution exists. *See Employers Casualty Co. v. Transport Insurance Co.*, 444 S.W.2d 606, 609 (Tex.1969).

Finally, TEX.REV.CIV.STAT.ANN. art. 8306, § 3 (Vernon Supp.1984) grants a subscribing employer immunity from suit by an employee:

(a) The employees [1] of a subscriber [2] ... shall have no right of action against their employer ... for damages for personal injuries ... but such employees ... shall look for compensation solely to the [Texas Employers' Insurance Association].

\* \* \* \* \* \*

(d) If an action for damages on account of injury to or death of an employee of a subscriber is brought by such employee ... against a person other than the subscriber, as provided in Section 6a, Article 8307, Revised Civil Statutes of Texas, 1925, and if such action results in a judgment against such other person, ... the subscriber ... shall have no liability to reimburse or hold such other person harmless on such judgment or settlement, nor shall the subscriber ... have any tort or contract liability for damages to such other person because of such judgment or settlement, in the absence of a written agreement expressly assuming such liability, executed by the subscriber prior to such injury or death.

See *Varela v. American Petrofina Co. of Texas*, 658 S.W.2d 561 (Tex.1983); *Standridge v. Warrior Constructors, Inc.*, 425 S.W.2d 472, 474–75 (Tex.Civ.App.—Houston [14th Dist.] 1968, no writ).

■ Since Commercial Drywall did not agree to pay Charter Builders its proportionate share of any common liability, Commercial Drywall is immune from suit for contribution if Durham was its employee. Charter Builders argues that the evidence factually and legally was insufficient to support the jury's finding that Durham was an employee of Commercial Drywall.

Commercial Drywall and Charter Builders stipulated that Building Interiors and Commercial Drywall had workers' compensation policies with the TEIA and that, "for bookkeeping purposes," the TEIA processed Durham's compensation claim under the workers' compensation policy issued for the benefit of Building Interiors employees. The parties further stipulated that the Employer's First Report of Injury filed with respect to Durham's injuries lists Building Interiors as Durham's employer and that Commercial Drywall did not file a report of injury.

Durham and the TEIA stipulated that on March 4, 1979, Durham sustained injuries in the course and scope of his employment "for Commercial Drywall and/or Building Interiors, Inc.," that the TEIA provided workers' compensation insurance "to Commercial Drywall and/or Building Interiors, Inc.," that "Commercial Drywall and/or Building Interiors, Inc.," filed on Durham's behalf a workers' compensation claim, and that the TEIA paid compensation and medical expenses.

The testimony as to Durham's employment was conflicting. The evidence reveals that, at the time of his injury, Durham was on Building Interiors' payroll and that he had a W–2 form from Building Interiors. Durham testified that he had no training in drywall work "prior to going to work for Commercial Drywall" and that Commercial Drywall directed him to work on the balcony from which he fell. The evidence further reflects that Building Interiors supplied labor to Commercial Drywall and that employees ultimately reported to a Commercial Drywall superintendent. We hold that the evidence was sufficient to support a finding that Durham was a Commercial Drywall employee. *See Associated Indemnity Co. v. Hartford Accident & Indemnity Co.*, 524 S.W.2d 373, 376 (Tex.Civ.App.—Dallas 1975, no writ) ("[E]ven though an injured workman was carried on the payroll of a subscriber, and even though that subscriber may have paid insurance premiums on the workman's wages, he is held not to be the employee of the subscriber for the purposes of the Workmen's Compensation Act if he was

---

**1.** "'Employee' shall mean every person in the service of another under any contract of hire, expressed or implied, oral or written...." TEX.REV.CIV.STAT.ANN. art. 8309, § 1 (Vernon 1967).

**2.** "'Subscriber' shall mean any employer who has become a member of the association by paying the required premium...." TEX.REV. CIV.STAT.ANN. art. 8309, § 1 (Vernon 1967).

temporarily subject to the right of control of another employer at the time of the injury."); *General Accident Fire & Life Assurance Corp. v. Callaway,* 429 S.W.2d 548, 551 (Tex.Civ.App.—Houston [1st Dist.] 1968, no writ) (evidence sufficient to support finding of "dual employment" where evidence shows one employer filed first report of injury and paid employee's wages, but another employer originally hired employee and controlled details of work); *Employers Casualty Co. v. American Employers Insurance Co.,* 397 S.W.2d 292 (Tex.Civ.App.—Amarillo 1965, writ ref'd n.r.e.).

■ Charter Builders additionally objected to the following definition of "employee," submitted in the court's charge:

"Employee" means a person in the service of another with an understanding, express or implied, that such person has the right to direct and control the details of the work and not merely the result to be accomplished. Payment of wages or salary is not solely determinative of the existence of an employment relationship.

Charter Builders contends, initially, that the definition, by referring to "such person" instead of "such other person," incorrectly combines definitions of "employee" and of "independent contractor." Charter Builders did not object at trial on this particular ground and, accordingly, has waived any error. TEX.R.CIV.P. 274 ("A party objecting to a charge must point out distinctly the matter to which he objects and the grounds of his objection. Any complaint as to an instruction, issue, definition or explanatory instruction, on account of any defect, omission, or fault in pleading, shall be deemed waived unless specifically included in the objections."); *Southwestern Bell Telephone Co. v. Ramsey,* 542 S.W.2d 466, 476 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.).

■ Charter Builders additionally objected that the last sentence of the definition constituted a comment on the weight of the evidence. We disagree. To constitute a comment on the weight of the evidence, an issue must be so worded as to

indicate an opinion by the trial judge as to the verity of a fact. *Metal Structures Corp. v. Plains Textiles, Inc.,* 470 S.W.2d 93, 102 (Tex.Civ.App.—Amarillo 1971, writ ref'd n.r.e.). An incidental comment on the weight of the evidence which is properly part of an explanatory instruction or definition is not improper. TEX.R.CIV.P. 277; *Norman v. First Bank & Trust, Bryan,* 557 S.W.2d 797 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.). Although the final sentence is not included in the definition of "employee" in the workers' compensation statute, TEX.REV.CIV. STAT.ANN. art. 8309, § 1 (Vernon 1967), the language is not a misstatement of the law, *see Employers Casualty Company,* 397 S.W.2d at 295, and does not indicate the trial judge's opinion on the issue. Accordingly, we hold that the sentence was not a comment on the weight of the evidence.

### Indemnification

■ Although the workers' compensation law precludes a suit by Durham against his employer, it does not preclude a third party's indemnity claim against the employer pursuant to a written indemnity agreement. TEX.REV.CIV.STAT.ANN. art. 8306, § 3 (Vernon Supp.1984). To establish its right to indemnity, Charter Builders relies on the following contractual provisions:

11. INDEMNIFICATION AND INSURANCE

A. Subcontractor agrees to assume the work at his own risk and agrees further to save harmless and defend Owner and/or Contractor from any and all claims, and/or demands, and/or judgments, and/or costs of suit or defense, including attorneys' fees and any expenses whether for personal injury or property damage, arising or alleged to have arisen, whether directly or indirectly, on account of or in connection with any work done by Subcontractor under this Subcontract or by any person, firm or corporation to whom any portion of the work is let or

sublet by Subcontractor or resulting from the use by any of the above, of any materials, tools, scaffolding, ways, machinery or other property of Owner and/or Contractor.

12. COMPLIANCE WITH LAWS

Subcontractor agrees to comply, at his own expense, with all laws and regulations applicable to the work covered by this Contract, including but not limited to the Occupational Safety and Health Act of 1970 (Public Law 91–596); Construction Safety Act (Public Law 91–54); and Subcontractor agrees to save and hold harmless the Contractor from any and all liability and damages, fines, costs and attorneys fees incurred by Contractor on account of Subcontractor's failure to comply with all laws and governmental regulations applicable to the work.

The jury found that Charter Builders' was negligent in the following respects, proximately causing Durham's injuries: erecting guardrails; providing a safe place to work; providing protective floor opening covers; requiring fulfillment by Commercial Drywall of compliance with OSHA regulations; and providing a safety program. The jury further found that Commercial Drywall's was negligent in the following respects, proximately causing Durham's injuries: erecting a guardrail; providing a safe place to work; providing protective floor opening covers; providing a safety program; and complying with all applicable laws and regulations.

■ We hold that paragraph 11A does not entitle Charter Builders to indemnity. "[A] contract of indemnity will not afford protection to the indemnitee against the consequences of his own negligence unless the contract clearly expresses such an obligation in unequivocal terms." *Fireman's Fund Insurance Co. v. Commercial Standard Insurance Co.*, 490 S.W.2d 818, 822 (Tex.1972). *See also Eastman Kodak Co. v. Exxon Corp.*, 603 S.W.2d 208, 211 (Tex. 1980); *Joe Adams & Son v. McCann Construction Co.*, 475 S.W.2d 721, 723 (Tex. 1971); *Amoco Production Co., Inc. v.*

*Thompson*, 657 S.W.2d 824, 828–29 (Tex. App.—Corpus Christi), *rev'd on other grounds*, 662 S.W.2d 951 (Tex.1983); *McKesson Chemical Co. v. Phelps Dodge Corp.*, 638 S.W.2d 64, 66 (Tex.Civ.App.—Corpus Christi 1982, writ ref'd n.r.e.); *Sun Oil Co. v. Massey*, 594 S.W.2d 125, 134 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.); *Atchison, Topeka & Santa Fe Railway Co. v. Smith*, 563 S.W.2d 660, 667 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.).

We have, in fact, progressed toward the so-called "express negligence" rule as near as is judicially possible without adopting it and thereby requiring in all cases that the parties state, in so many words, that they intend to save the indemnitee harmless from liability for his own negligence.... [B]road general statements of the indemnity obligation are not sufficient to protect an indemnitee against his own negligence, and ... the only presently recognized exceptions are limited to (1) agreements in which one person clearly undertakes to indemnify another against liability for injuries or damages caused by defects in certain premises or resulting from the maintenance or operation of a specified instrumentality; ... (2) agreements which fall within the peculiar circumstances of the indemnitor having complete supervision over the property and employees of the indemnitee in connection with the performance of the indemnitor's contract; ... and (3) contracts in which there is an unequivocal provision that indemnitor will protect and indemnify the indemnitee from any and all liability by reason of injuries to indemnitor's employees....

*Fireman's Fund*, 490 S.W.2d at 822.

The *Fireman's Fund* rule clearly applies to paragraph 11A. The contractual statement of indemnity is broad and general and does not expressly or impliedly put Charter Builders on notice that it may be liable, without fault, for a potentially large damage award. *See Spence & Howe Construction Co. v. Gulf Oil Corp.*, 365 S.W.2d 631, 634 (Tex.1963).

Additionally, none of the exceptions applies. Commercial Drywall did not clearly undertake to indemnify Charter Builders for injuries due to premises defects or to the maintenance or operation of a specified instrumentality. *See Mitchell's, Inc. v. Friedman,* 303 S.W.2d 775, 778 (Tex.1957); *Atchison, Topeka & Santa Fe Railway Co.,* 563 S.W.2d at 667. Nor did Commercial Drywall have complete supervision over Charter Builders' property and employees nor unequivocally agree to protect and indemnify Charter Builders from any and all liability by reason of injuries to Commercial Drywall employees. *See Chevron Oil Co. v. E.D. Walton Construction Co., Inc.,* 517 F.2d 1119, 1122–23 (5th Cir. 1975); *Ohio Oil Co. v. Smith,* 365 S.W.2d 621 (Tex.1963).

Furthermore, we do not agree that this case is controlled by *Barnes v. Lone Star Steel Co.,* 642 F.2d 993 (5th Cir.1981). The *Barnes* court held the *Fireman's Fund* rule inapplicable to a situation in which the indemnitee was negligent solely in failing to rectify the negligence of the indemnitor. In the instant case, the jury found Charter Builders liable for independent, non-derivative acts of negligence.

Finally, we hold that paragraph 12 was insufficient to invoke an obligation to indemnify. The jury found that Charter Builders was negligent in failing to require Commercial Drywall to comply with OSHA regulations and that Commercial Drywall failed to comply with all applicable laws and regulations. Yet Charter Builders was not held liable solely for derivative negligence but also for independent acts of negligence which concurred to cause Durham's injuries.

Accordingly, we overrule all points of error and affirm.