George Russell **BARHAM** and United States Fire Insurance Company, Appellants,

v.

**TURNER CONSTRUCTION COMPANY OF TEXAS,** Appellee.

No. 05–90–00048–CV.

Court of Appeals of Texas, Dallas.

Dec. 11, 1990.

Rehearing Denied Jan. 28, 1991.

Michael A. Robertson, Grand Prairie, for appellants.

Mickie S. Fleetwood, Dallas, for appellee.

Before STEWART, OVARD and BURNETT, JJ.

## OPINION

STEWART, Justice.

George Russell Barham and United States Fire Insurance Company (Insurance Company)[1] appeal from a take nothing judgment in favor of Turner Construction Company of Texas (Turner Construction) in Barham's suit for damages arising from a construction accident. Barham and Insurance Company assert seven points of error on appeal. In their first five points, Barham and Insurance Company contend that the trial court erred in: (1) submitting a definition of negligence which excluded consideration by the jury of the negligence of Turner Construction, the general contractor, in failing to furnish safe materials, to provide a safe place to work, and to inspect; (2) submitting a definition of negligence which limited the jury to consideration of the work performed by Crane Safety and Maintenance, Inc. because it was an impermissible comment on the weight of the evidence; (3) refusing to submit the theory of product liability; (4) admitting photographs of Barham taken by Turner Construction's investigator because they were procured by fraud and misrepresentation on the part of said investigator in violation of Disciplinary Rule 7–104; and (5) failing to grant Barham's motion for mistrial based on the admission of the al-

---

1. Insurance Company intervened in Barham's suit for damages to recover workers' compensation benefits paid to Barham pursuant to the Texas Workmen's Compensation Act. On appeal, Insurance Company adopted the brief filed by Barham.

legedly improperly obtained photographs. In points six and seven, Barham and Insurance Company argue that the answer of the jury to question 3 (point six) and to questions 1(a) and 2(a) (point seven) are so against the great weight and preponderance of the evidence as to be manifestly unjust. We disagree. Accordingly, we affirm the trial court's judgment.

## FACTUAL BACKGROUND

Turner Construction, as the general contractor, hired Crane Safety and Maintenance, Inc. (Crane Safety), as a subcontractor, to erect steel columns at the Coit Central Tower project. Barham was foreman of the Crane Safety crew. While the crew was erecting one of four forty-foot steel columns, a steel erection plate,[2] which was wired to the top of the column, fell and struck Barham's head, which was covered by a hardhat. Barham sued Turner Construction and Southern Industrial Steel Company (SISCO), fabricator of the steel column, alleging causes of action for negligence and strict product liability. Barham alleged damages which included inability to work at his occupation as an iron worker after the accident, permanent loss of earning capacity, pain and suffering, mental anguish, and loss of physical capacity. The jury found that Barham's injuries were not proximately caused by the negligence of Turner Construction, but were proximately caused by the negligence of Barham and SISCO, and attributed fifty percent of the negligence to each. SISCO settled with Barham and was dismissed from the suit. This appeal involves only the take nothing judgment in favor of Turner Construction.

## DEFINITION OF NEGLIGENCE

In the first point, Barham and Insurance Company contend that the trial court erred in submitting a definition of negligence which excluded consideration by the jury of the negligence of Turner Construction, the general contractor, in failing to furnish safe materials, to furnish a safe workplace, and to inspect. They argue that the trial

court incorrectly defined negligence to limit the jury to consideration of the work performed by Crane Safety, thereby failing to submit the question of Turner Construction's negligence in the performance of its duties to Crane Safety's employees. Barham and Insurance Company further argue that Turner Construction's duty to furnish a safe workplace and to inspect did not depend upon Turner Construction's right to control Crane Safety's work. Turner Construction acknowledges that it had certain duties to Crane Safety's employees, but asserts that Barham and Insurance Company fail to recognize the parameters of a general contractor's duty to its subcontractors and that the instructions submitted by the trial court to the jury accurately reflected Turner Construction's duties as a general contractor under the facts of this case.

The trial court submitted the following definition of negligence to the jury: " 'Negligence' with regard to [Turner Construction] means the failure to use ordinary care in the exercise of its control, if any, over the details of the work performed by [Crane Safety]." Barham objected and requested the following definition:

> "Negligence" means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

Additionally, Barham requested the following issues on Turner Construction's right to and exercise of control over Crane Safety's work:

> Did [Turner Construction] have a right to control any of the details of the work of erecting the column in question?

> Did [Turner Construction] actually exercise any control over the details of the work of erecting the column in question?

The trial court refused to submit Barham's requested issues.

---

**2.** An erection or connection plate is a device used to facilitate erection of columns and does

not contribute to the structural integrity of the building.

■ The trial court must submit explanatory instructions and definitions that will enable the jury to render a verdict and must explain any legal or technical terms. Tex.R.Civ.P. 277. The trial court has considerable discretion in deciding which instructions are necessary and proper when submitting issues to the jury. *Clancy v. Zale Corp.*, 705 S.W.2d 820, 825 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *K–Mart Corp. Store No. 7441 v. Trotti*, 677 S.W.2d 632, 637 (Tex.App.—Houston [1st Dist.] 1984), *writ ref'd n.r.e. per curiam*, 686 S.W.2d 593 (Tex.1985). In determining whether there has been an abuse of discretion, this Court may not substitute its judgment for that of the trial court, but must determine only whether the trial court's action was arbitrary or unreasonable. *K–Mart Corp. Store No. 7441*, 677 S.W.2d at 636. Error in a jury charge supports reversal only if it comprises such a denial of the rights of the complaining party as was reasonably calculated to and probably did cause the rendition of an improper judgment. *Island Recreation Dev. v. Republic of Texas Sav.*, 710 S.W.2d 551, 555 (Tex. 1986).

■ The essential elements of actionable negligence are a legal duty owed by one person to another, a breach of that duty, and damages proximately resulting from such breach. *Colvin v. Red Steel Co.*, 682 S.W.2d 243, 245 (Tex.1984). The plaintiff has the burden of establishing each of these elements. *Gray v. Baker & Taylor Drilling Co.*, 602 S.W.2d 64, 65 (Tex.Civ. App.—Amarillo 1980, writ ref'd n.r.e.). The existence of a legal duty under a given statement of facts is essentially a question of law for the court. *Id.; see Abalos v. Oil Dev. Co.*, 544 S.W.2d 627, 631 (Tex.1976).

In this case, the issues to be submitted to the jury depend upon the scope of Turner Construction's duty as a general contractor. The relevant inquiry in examining the trial court's charge is whether, under the facts of this case, Turner Construction had any duty to Barham that was not encompassed within the trial court's charge.

■ An owner or occupier of land has a duty to use reasonable care to keep the premises under his control in a safe condition. *Redinger v. Living, Inc.*, 689 S.W.2d 415, 417 (Tex.1985). A general contractor who is in control of the premises is charged with the same duty as an owner or occupier. *Agricultural Warehouse, Inc. v. Uvalle*, 759 S.W.2d 691, 694 (Tex.App.—Dallas 1988), *writ denied per curiam*, 779 S.W.2d 68 (Tex.1989). A general contractor on a construction site has the duty to use due care to provide a safe place for workmen on the premises, including the employees of other contractors. *Smith v. Henger*, 148 Tex. 456, 226 S.W.2d 425, 431 (1950). This duty may include the duty to inspect the premises to discover dangerous conditions. *Id.* There are two distinct lines of cases. First, there are those cases in which the dangerous condition existed on the premises at the time of the subcontractor's entry or in which the dangerous condition was created by someone or through some means unrelated to the activity of the injured employee or his employer. *Shell Chem. Co. v. Lamb*, 493 S.W.2d 742, 746 (Tex.1973). In these cases, the subcontractor has no duty to inspect the premises for concealed dangers and may rely as a matter of law on the general contractor to discharge his duty to inspect the premises and to warn of any dangerous condition. *Zamborowske v. OES, Inc.*, 731 S.W.2d 614, 616 (Tex.App.—Houston [1st Dist.] 1987, no writ). Thus, the duty to provide a safe workplace imposes liability upon a general contractor for injuries caused by defective or dangerous conditions existing on the premises at the time the subcontractor enters the property. *Shell Chem. Co.*, 493 S.W.2d at 746. Second, there are those cases in which the dangerous condition arose out of the performance of the work for which the subcontractor was employed. *Id.* A general contractor generally is not liable for injuries resulting from the work or activity of an independent contractor where the danger arises from the independent contractor's performance of its task. *Id.* Further, a general contractor does not have a duty to see that an independent contractor performs its work in a safe manner, *Abalos*, 544 S.W.2d at 631, and can assume that an independent contractor will

take proper care and precautions to assure the safety of its own employees. *Agricultural Warehouse Inc.*, 759 S.W.2d at 695.

There is a distinction between those dangers inherent in the work of an independent contractor, such as the danger of falling from a steel beam while engaged in the construction of a roof, and those dangers or defective conditions which an independent contractor might possibly encounter but which arise out of or result from some act or failure to act upon the part of an owner or occupier of premises.

*Union Carbide Corp. v. Burton*, 618 S.W.2d 410, 413–14 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.).

■ The Texas Supreme Court has adopted section 414 of the Restatement (Second) of Torts as an exception to the general rule of nonliability. *Redinger*, 689 S.W.2d at 418. Section 414 provides:

One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

RESTATEMENT (SECOND) OF TORTS § 414 (1965). This rule applies when the employer retains some control over the manner in which the independent contractor's work is performed, but does not retain the degree of control which would subject him to liability as a master. *Redinger*, 689 S.W.2d at 418. The employer's role must be more than a general right to order the work to start or stop, to inspect progress, or to receive reports. *Id.*

[The general contractor] may retain only the power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to [the general contractor] or others. Such a supervisory control may not subject him to liability under the principles of Agency, but he may be liable under the rule stated in [section 414 of the Restatement (Second) of Torts] unless he

exercises his supervisory control with reasonable care so as to prevent the work which he has ordered to be done from causing injury to others.

*Id.* The fact question for the jury in such cases is whether the general contractor used ordinary care in the exercise of its control over the subcontractor. *See Agricultural Warehouse Inc.*, 759 S.W.2d at 694.

■ The allegedly dangerous condition to which Barham was subjected was the wired erection plate, which fell when the Crane Safety crew lifted the column into the air. Because the evidence shows that the steel columns arrived on the project site after the Crane Safety crew, the allegedly dangerous condition that caused Barham's injuries did not exist on the premises at the time Crane Safety's employees entered the premises. Thus, this case does not involve a premises defect.

Turner Construction hired Crane Safety to erect the steel columns. The condition of the columns was not dangerous until Crane Safety's employees raised the columns into the air without first determining whether the erection plates were secure or removing them. Further, the record reflects that Barham and another member of the Crane Safety crew unloaded the columns from the delivery truck. This put the Crane Safety crew in a position to discover that the erection plates were wired instead of welded or bolted to the columns and to take steps to avoid any possible danger. The danger posed to Barham arose out of Crane Safety's work activity, *i.e.*, erecting the columns, and was created by the manner in which it performed its task, *i.e.*, lifting the columns into the air without first determining whether the erection plates were secure.

Under the facts of this case, Turner Construction did not have a duty to see that Crane Safety performed its work in a safe manner unless Turner Construction retained and exercised a sufficient right of control to subject it to liability pursuant to section 414 of the Restatement (Second) of Torts. *See Redinger*, 689 S.W.2d at 418. Thus, under the facts of this case, the

scope of Turner Construction's duty to Crane Safety's employees depends upon what control, if any, Turner Construction exercised over the work of Crane Safety. The trial court's definition of negligence placed the relevant issue of whether Turner Construction exercised a sufficient right of control to subject it to liability before the jury by defining negligence as to Turner Construction in terms of its "control, if any," over Crane Safety's work. Because the trial court placed the control issue before the jury, the trial court did not err in refusing to submit the requested special issues. *See Freedom Homes of Texas v. Dickenson*, 598 S.W.2d 714, 719 (Tex.Civ. App.—Corpus Christi 1980, writ ref'd n.r.e.) (trial court did not err in refusing the appellee's requested special issues and instructions where issues were improper or already included in the charge). We overrule the first point.

In the second point, Barham and Insurance Company complain that the trial court erred in submitting a definition of negligence which limited the jury to consideration of the work performed by Crane Safety because it was an impermissible comment on the weight of the evidence. Rule 277 of the Texas Rules of Civil Procedure provides in pertinent part:

> In all jury cases, the court shall, whenever feasible, submit the cause upon broad-form questions. The court shall submit such instructions and definitions as shall be proper to enable the jury to render a verdict.
>
>     *     *     *     *     *     *
>
> The court shall not in its charge comment directly on the weight of the evidence or advise the jury of the effect of their answers, but *the court's charge shall not be objectionable on the ground that it incidentally constitutes a comment on the weight of the evidence or advises the jury of the effect of their answers when it is properly a part of an instruction or definition.*

Tex.R.Civ.P. 277 (emphasis added).

       To comprise error, a trial court's comment on the weight of the evi-

dence must be direct, *i.e.,* it must suggest to the jury the trial court's opinion concerning a matter which the jury must decide. *Charter Builders v. Durham*, 683 S.W.2d 487, 491 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). The definition of negligence submitted by the trial court did not misstate the law, was properly a part of the trial court's charge, and did not suggest to the jury the trial court's opinion on the issue. Thus, the definition was not an improper comment on the weight of the evidence. *Id.* We overrule the second point.

## PRODUCT LIABILITY THEORY

In the third point, Barham and Insurance Company contend that the trial court erred in refusing to submit the theory of product liability against Turner Construction. The trial court refused Barham's request to submit definitions and issues regarding his manufacturing defect allegations. Barham and Insurance Company argue that the failure of the trial court to submit the requested product liability issues amounted to a directed verdict on the product liability issue; that Barham established that, although the plans and specifications called for the erection plate to be welded, it was wired to the end of the column; and that the column was placed in the stream of commerce as a component of the office building under construction. Turner Construction argues that the trial court properly refused to submit Barham's theory of product liability because Barham did not show that Turner Construction sold the steel columns or that it was in the business of selling steel columns.

       Section 402A of the Restatement (Second) of Torts [3] articulates the doctrine of strict liability as follows:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

---

**3.** The Texas Supreme Court adopted section 402A of the Restatement (Second) of Torts in

*McKisson v. Sales Affiliates, Inc.,* 416 S.W.2d 787, 788 (Tex.1967).

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

RESTATEMENT (SECOND) OF TORTS § 402A (1965). Although phrased in terms of sellers, it is not necessary that the defendant actually sell the product; the defendant need only be engaged in the business of introducing the product into channels of commerce. *Armstrong Rubber Co. v. Urquidez,* 570 S.W.2d 374, 375 (Tex.1978). The product must be released in some manner to the consuming public. *Id.* at 376.

■■■ The justifications for strict liability are: (1) that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; (2) that the public has the right to and does expect that reputable sellers will stand behind their goods; (3) that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and (4) that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products. RESTATEMENT (SECOND) OF TORTS § 402A comment c (1965). Barham's evidence showed that SISCO sold steel columns used in the construction of Coit Central Tower, a multistory office building, and that Turner Construction was the general contractor in construction of the building. Turner Construction is in the business of selling its services as a general contractor. We find nothing in the record to indicate that Turner Construction is in the business of selling the steel columns and erection plates which caused Barham's injury. Any alleged "sale" of the steel columns by Turner Construction was incidental to its contract to provide the services necessary to construct a building. At most, Turner Construction was an occasional seller of components of buildings; it was not engaged in the sale of steel columns as part of its business. *See* RESTATEMENT (SECOND) OF TORTS § 402A comment f (1965). Thus, we hold that the underlying consumer protection principles of strict liability do not apply in this case. *See id.* We conclude that, under the facts of this case, Turner Construction did not introduce the steel columns manufactured by SISCO into channels of commerce by releasing them to the consuming public and that Turner Construction was not in the business of selling such steel columns. The trial court did not err in refusing to submit the theory of product liability to the jury. We overrule the third point.

## ADMISSION OF PHOTOGRAPHS

In the fourth point, Barham and Insurance Company contend that the trial court erred in admitting photographs of Barham taken by Turner Construction's investigator because they were procured by fraud and misrepresentation on the part of the investigator and in violation of Disciplinary Rule 7–104. In the fifth point, Barham and Insurance Company contend that the trial court erred in failing to grant the motion for mistrial based on the admission of the improperly obtained photographs.

At trial, Barham claimed that he was unable to perform various tasks as a result of his injuries, including lifting heavy objects or climbing ladders. Turner Construction impeached Barham's testimony with photographs of Barham performing air conditioning work on a rooftop after the date of the accident. The activity required Barham to climb a ladder and lift objects.

■■■ Turner Construction's attorney testified out of the presence of the jury as follows in connection with Barham's objection to admission of the photographs:

Q. Mr. Graham, you had some pictures that you offered into evidence yesterday[. W]ho took those pictures?

A. A man named Scott Glazener [spelling]. I think that's how you spell his last name.

Q. How did he happen to be at that Texaco Car Wash to take a picture of Mr. Barham?

A. It's my understanding that the car was[h] is owned—and/or owned and operated by his cousin, a man named Wayland Jennings, Jr. He called his cousin and asked him if he needed any air conditioning work done, and his cousin said, yes, he did. And it's my understanding that his cousin called Mr. Barham and had him come out to check the air conditioner.

Q. And who does Scott Glazener work for?

A. You mean, what's the name of his company?

Q. Who was he acting for when he called his cousin?

A. Either—that's kind of a difficult question—it would be either be [sic] me or my law firm or Turner Construction and also Southern Industrial Steel Company.

Q. Did you know at the time that Mr. Glazener had his cousin call Mr. Barham,, [sic] that Mr. Barham had an attorney?

A. Oh, yeah, sure, I did.

Barham and Insurance Company contend that the photographs should have been excluded from evidence because they were obtained in violation of Disciplinary Rule 7–104 since the investigator caused Jennings to contact Barham without the knowledge or permission of Barham's attorney.

Disciplinary rule 7–104 provides:

(A) During the course of his representation of a client, a lawyer shall not:

(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.

Turner Construction argues that its attorney did not violate rule 7–104 because it is undisputed that he did not instruct the investigator to contact Barham and because the business owner who did contact Barham did not work for either Turner Construction or its lawyer. We agree that under the facts of this case Turner Construction's lawyer did not directly violate rule 7–104.

Barham and Insurance Company concede that Turner Construction's attorney was unaware of the allegedly improper conduct prior to its occurrence, but they maintain that his lack of knowledge is irrelevant to his subsequent failure to disclose and his use of the photographs. They rely on two cases which upheld the exclusion of evidence found to be improperly obtained. Neither case was based on a violation of the Disciplinary Rules.[4]

In *Day & Zimmerman, Inc. v. Strickland,* 483 S.W.2d 541, 546 (Tex.Civ.App.— Texarkana 1972, writ ref'd n.r.e.), the court of appeals upheld the trial court's refusal to allow a witness to testify to anything he observed or to any opinion formed from his observations of the condition of the appellee's house when the witness examined the same at a time when neither the appellee nor the appellee's attorney was present. The court based its opinion on a violation of rule 167 of the Texas Rules of Civil Procedure. In *Trans–Cold Express, Inc. v. Arrow Motor Transit, Inc.,* 440 F.2d 1216 (7th Cir.1971), the court upheld the exclusion of evidence obtained when an investigator employed by one of the attorneys improperly interviewed one of the parties without notice to the party's attorney. The court rejected the appellant's argument that the "search for truth" justified admission of the evidence. It also noted that the excluded evidence was not impeaching. In both cases, the court held that the trial court did not abuse its discretion in excluding the evidence. *Day & Zimmermann, Inc.,* 483 S.W.2d at 546; *Trans–Cold Express, Inc.,* 440 F.2d at 1218. Neither court formulated an exclusionary rule that would have required the evidence to be excluded.

---

4. Barham and Insurance Company admit that Texas courts have not ruled directly on the question of whether evidence obtained in violation of the Disciplinary Rules is admissible.

■ Generally, all evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence is admissible. Tex.R.Civ.Evid. 401 & 402. However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Tex.R. Civ.Evid. 403. The complained-of photographs were used to impeach Barham's testimony concerning the extent of the injuries suffered by him when the erection plate hit him on the head. Turner Construction introduced the photographs of Barham to impeach his claims that he was unable to perform certain activities. We find no case which would require the exclusion of these photographs, which were relevant to impeach Barham's testimony and claims as to his injuries. Even the exclusionary rule in criminal cases does not prevent use of illegally seized evidence on cross-examination to impeach a defendant. *Walder v. United States*, 347 U.S. 62, 65–66, 74 S.Ct. 354, 356–57, 98 L.Ed. 503 (1964). Thus, under the facts of this case, we hold that even assuming, arguendo, that rule 7–104 was violated, the trial court did not abuse its discretion in admitting the complained-of photographs for impeachment purposes. We further hold that the trial court did not err in overruling the motion for new trial based upon the admission of the photographs.

We note that at trial Barham argued only that the trial court should exclude the photographs because they were obtained in violation of Disciplinary Rule 7–104. For the first time on appeal, Barham and Insurance Company appear to contend that the photographs are inadmissible because they were obtained by fraud and misrepresentation on the part of the investigator. To the extent that such argument is not connected to Barham and Insurance Company's assertions concerning Disciplinary Rule 7–104, it is waived. *See Hernandez v. Bexar Co. Nat'l Bank*, 710 S.W.2d 684, 687 (Tex.App. —Corpus Christi), *writ ref'd n.r.e.*, 716 S.W.2d 938 (Tex.1986) (an appellant may not raise on appeal objections not voiced at trial). We overrule the fourth and fifth points.

## ANSWERS TO JURY QUESTIONS

In the sixth and seventh points, Barham and Insurance Company contend that the jury's answers to question 3 (point 6) and questions 1(a) and 2(a) (point seven) were so against the great weight and preponderance of the evidence as to be manifestly unjust. We deal first with the seventh point. Question 1(a) inquires whether the negligence, if any, of Turner Construction proximately caused the occurrence in question. Question 2 asked what percentage of the negligence that caused the occurrence was attributable to each person found in question 1 to be negligent.

■ Barham and Insurance Company state in their briefs that they have brought forward points six and seven on appeal to prevent any possible waiver of the right to relitigate damages and the negligence of Turner Construction. Neither Barham nor Insurance Company discusses point seven in their briefs, cites any authority to support the point, or points to the portion of the record that supports the complaint that the jury answers to questions 1(a) and 2(a) are so against the great weight and preponderance of the evidence as to be manifestly unjust. Points of error asserted on appeal but not briefed are waived. *Honeywell, Inc. v. Imperial Condominiums Ass'n, Inc.*, 716 S.W.2d 75, 82 (Tex.App.—Dallas 1986, no writ); *Charter Builders*, 683 S.W.2d at 489. Further, an appellant has the burden to show that the record supports contentions urged and to point out the place in the record where the complained-of matters are shown. *Kropp v. Prather*, 526 S.W.2d 283, 288 (Tex.Civ.App. —Tyler 1975, writ ref'd n.r.e.). The rules do not require us to read through the entire record to determine whether Barham and Insurance Company's claims have any validity. Thus, we conclude that Barham and Insurance Company have failed to meet their burden as to point seven. We overrule the seventh point.

Because we overrule the first through fifth and seventh points, we need not ad-

dress the sixth point complaining that the amount of damages was so against the great weight and preponderance of the evidence as to be manifestly unjust.

The judgment of the trial court is affirmed.