NO.
12-02-00269-CV

 

                     IN THE COURT OF APPEALS 

 

          TWELFTH
COURT OF APPEALS DISTRICT

 

                                TYLER, TEXAS

DONALD R.
HOPPER,                                   '                 APPEAL
FROM THE 153RD

APPELLANT

 

 

V.                                                                         '                 JUDICIAL
DISTRICT COURT OF

 

JAMES
SWANN AND NEIL WRIGHT

D/B/A
NEIL WRIGHT TRANSPORTATION,

APPELLEES                                                     '                 TARRANT
COUNTY, TEXAS

                                                                                            
                                                               

                                                      MEMORANDUM
OPINION

Donald
R. Hopper (AHopper@) appeals a take-nothing judgment
entered in favor of James Swann (ASwann@) and Neil Wright (AWright@)
d/b/a Neil Wright Transportation (AWright
Transportation@).  We affirm.

 

BACKGROUND

On
September 20, 1999, Swann was employed as a truck driver for Wright Transportation,
which was owned by Wright, to drive a load of metal coils from Nashville to
Fort Worth.  Each coil  weighed approximately 2,000 to 3,000 pounds.  In order to secure this load, the metal coils
were tied down using nylon straps with rubber pads on the edge of each coil
between the strap and the coil.  The
entire load was then covered with a tarp in accordance with Department of
Transportation (ADOT@) requirements.  








Swann
testified that until he arrived in Fort Worth, Texas, he had no problems with
the load.  However, as he approached the
westbound intersection of East Loop 820 and I-20, one of the straps broke and
one of the metal coils slipped from the truck and rolled across the westbound
lanes of I-20.  At the same time, Hopper
was also traveling westbound, and the coil slammed into the front
passenger-side quarter-panel of Hopper=s
vehicle.  As part of the damage, the
windows on that side of Hopper=s
vehicle were shattered, sending glass onto the vehicle=s
passengers.  As a result, Hopper=s eye was injured.  An ambulance and a policeman were
subsequently called to the scene; however, Hopper and his family declined to be
taken to a hospital and left the scene in Hopper=s
vehicle.  The policeman gave Swann a
ticket for failing to properly secure his load.

Shortly
thereafter, Swann called Wright to inform him of the incident.  At this time, Swann also observed that Hopper
had driven in his vehicle to a nearby gas station and was cleaning out the
broken glass.  After ending his
conversation with Wright, Swann continued on to complete his delivery.  

Within
four days of the incident, Hopper was contacted by Wright=s insurance company, and he informed
the company of his injury.  On November
9, 1999, the claim investigator for Wright=s
insurer contacted Hopper to inform him that they would be investigating the
accident.  On November 30, Terry
Christlieb, Hopper=s
attorney, sent a letter to the claim investigator informing him that he had
been retained to represent Hopper and that all future communication should be
directed to him.              Seven months after the accident, but prior to the time
Hopper filed suit, in accordance with his regular business practices, Wright
destroyed Swann=s log
books relating to that trip.  At some
point after the accident, on a date he was unable to recall, Wright took the
broken strap and tarp to the dump and threw them away.  

On
October 17, 2000, Hopper filed suit against Swann, Wright, and Wright
Transportation, alleging that Swann was negligent in failing to 1) keep a
proper lookout, 2) maintain a proper speed, 3) keep his vehicle under proper
control, 4) assure that the load was properly inspected and secured, and 5)
yield the right-of-way.  On May 15, 2002,
Hopper filed a ABrief in
Support of Spoliation Instruction,@
asking the trial court to 1) prevent Swann or Wright from testifying or
introducing evidence about the broken strap, and 2) include a spoliation
instruction in the charge.  The trial
court agreed that Swann and Wright should not adduce any evidence as to why the
strap broke, but denied the part of Hopper=s
brief which asked for a spoliation instruction. 









On
May 16, Hopper=s case
went to trial.  At the end of the trial,
the trial court granted Wright=s
motion for a directed verdict as to the individual claims against him.[1]  The jury later returned a finding of no
negligence on the part of Swann.  On June
16, Hopper filed a motion for a new trial, which was denied, and judgment was
entered in favor of Swann.  This appeal
followed.

 

Review of the Refusal to Submit a Spoliation
Instruction

In
his first issue, Hopper contends that the trial court erred by failing to grant
his requested spoliation instruction.  A
spoliation instruction is an instruction given to the jury outlining
permissible inferences they may make against a party who has lost, altered, or
destroyed evidence.  Brewer v.
Dowling, 862 S.W.2d 156, 159 (Tex. App.BFort
Worth 1993, writ denied).  Swann and
Wright argue that because no objection was made to the trial court=s decision not to give such an
instruction, other than at a pretrial hearing, Hopper has waived this
argument.  We disagree.

In
order to preserve an error relating to an alleged failure of the trial court to
submit a desired instruction, three steps must be taken.  First, a proper instruction must be tendered
in writing and requested prior to submission. 
Wright Way Const. Co., Inc. v. Harlingen Mall Co., 799
S.W.2d 415, 418 (Tex. App.BCorpus
Christi 1990, writ denied).  Second, a
specific objection must be made to the omission of the instruction, and third,
the trial court must make a ruling on the issue.  Id.  Here, all three steps were taken.  

Swann
and Wright argue that Hopper=s
actions were insufficient to preserve error because they were made only in a
pre-trial hearing.  The Texas Supreme
Court, however, has held that the rules for preservation of this type of error
are to be Arelaxed  . . . 
in an effort to determine cases on the merits rather than on slight
technical defects.@  In re J.F.C., 96 S.W.3d 256,
305 (Tex. 2002).  The supreme court has
also stated that 

 

[t]here should
be but one test for determining if a party has preserved error in the jury
charge, and that is whether the party made the trial court aware of the
complaint, timely and plainly, and obtained a ruling.  The more specific requirements of the rules
should be applied, while they remain, to serve rather than defeat this
principle.

 








State
Dep=t of
Highways & Pub. Transp. v. Payne, 838 S.W.2d 235, 241 (Tex. 1992); see
also Tex. R. Civ. P. 278 (The
failure to submit a question will not be a ground for reversal unless its
submission has been requested in writing and tendered by the party complaining
of the judgment.).  Thus, so long as the
written instruction is presented to the court prior to submission of the
charge, this court will not impose a strict timing requirement.  See Alaniz v. Jones & Neuse,
Inc., 907 S.W.2d 450, 451 (Tex. 1995). 
Further, we conclude that Hopper=s
pre-trial motions, along with his brief in support of a spoliation instruction
which he filed with the trial court, were sufficient to properly serve as the
requisite objection, as their commutative effect was to call the trial court=s attention to Hopper=s complaint.  See Payne, 838 S.W.2d at
241; see also Crescendo Investments, Inc. v. Brice, 61
S.W.3d 465, 479 (Tex. App.BSan
Antonio 2001, pet. denied) (stating that spoliation issue can be preserved when
raised in pre-trial hearing).  Therefore,
we hold that Hopper did not waive this issue.

Standard
of Review

A trial court=s
decision to deny a requested instruction is reviewed for an abuse of discretion.  Ordonez v. W.M. McCurdy & Co.,
984 S.W.2d 264, 273 (Tex. App.BHouston
[1st Dist.] 1998, no pet.).  Trial courts
are required to submit all jury questions necessary to enable the jury to reach
a verdict.  See Tex. R. Civ. P. 277; Ordonez,
984 S.W.2d at 267.  However, trial courts
have broad discretion in making a determination whether to provide juries with
a spoliation instruction.  Lively
v. Blackwell, 51 S.W.3d 637, 642 (Tex. App.BTyler
2001, pet. denied).  This court will thus
generally leave to the discretion of a trial court the decision to submit or
not submit any such jury instruction.  Mobil
Chem. Co. v. Bell, 517 S.W.2d 245, 256 (Tex. 1974).  In our determination of whether a trial court
has abused its discretion, this court will not substitute its judgment for that
of the trial court and will find error only if the record reflects that the
trial court=s action
was arbitrary or unreasonable.  Barham
v. Turner Constr. Co. of Texas, 803 S.W.2d 731, 735 (Tex. App.BDallas 1990, writ denied).  An error resulting from a failure to instruct
is reversible only if it probably resulted in an improper judgment.  Island Recreational Dev. Corp. v.
Republic of Tex. Sav. Ass=n,
710 S.W.2d 551, 555 (Tex. 1986).

The
Evidence in Support of the Spoliation Instruction








At the hearing on Hopper=s
motion for a spoliation instruction, the only evidence submitted in support of
the motion was Wright=s
testimony.  Wright stated that shortly
after the accident occurred, Swann called him and told him that Hopper had
refused medical treatment and had driven away from the scene in his vehicle
under its own power.  Swann also told
Wright that he was able to leave the scene and deliver the load to its destination
and that Wright=s truck
was not taken out of service by any law enforcement agency.  

After the accident, Wright contacted his insurance company
only to make a claim for the lost metal coil. 
An adjuster from Wright=s
insurance company called him after he made the claim for the cargo, and asked
for more information about the metal coil. 
Wright testified that he was never contacted by anyone from his
liability insurance carrier to provide information regarding the September 20,
1999 incident, and the only time he spoke with anyone regarding the incident
was to resolve the cargo claim.  

Wright further testified that he never received any
communication from Hopper or his attorney regarding the accident, and his
liability insurance carrier never contacted him and told him to retain any type
of evidence.  With regard to the driver=s log books, Wright stated that his
practice was to retain a complete set of log books for six months, and on the
seventh month, to throw away the set of log books that was six months old.  Seven months after the September 20, 1999
accident, Wright stated that he threw away the log book that was compiled on
September 20.  Prior to the date he threw
away the log books, Wright was never contacted by anyone, including his
liability insurance carrier and Hopper=s
attorney, who gave him any indication that he was going to be sued or that a
claim would be made against him prior to the date he threw the away the log
books.  

With regard to the nylon strap, Wright testified that it was
four inches wide, had a strength rating of 12,000 pounds, and complied with DOT
regulations.  After Swann completed the
delivery after the accident, he brought the strap and the tarp that covered the
load to Wright, and Wright put the two items in his backyard.  When he observed it after the accident, he
saw that the strap had been cut; however, none of the other straps that tied
down the other coils had been cut or failed for any other reason.  At some point in time before he was served
with Hopper=s
lawsuit, Wright threw away the strap.  At
the time he threw away the strap, Wright stated that he had never been contacted
by anyone or received any indication from anyone that made him anticipate that
he would be sued over the accident.  








During questioning from the trial judge, Wright testified
that he had been in business since 1992 and that he had never been sued or had
any sort of incident comparable to the one on September 20, 1999.  Wright also said that he had never had anyone
make a claim against him and that Hopper=s
claim was the first.  At the close of the
hearing, the trial court granted Hopper=s
request that Swann and Wright not introduce any evidence as to why the strap
broke but denied Hopper=s
request for a spoliation instruction.  

Analysis

In 2003, the Texas Supreme Court addressed the issue of
whether a party has a duty to preserve material evidence in Wal-Mart
Stores, Inc. v. Johnson, 106 S.W.3d 718, 722 (Tex. 2003). In that case,
a Wal-Mart employee accidentally knocked one or more decorative reindeer from a
high shelf onto Johnson=s
head and arm.  Id. at
720.  When a supervisor came to investigate,
Johnson told her that he was not hurt. 
After a Wal-Mart employee cleaned and bandaged a cut on Johnson=s arm, Johnson left the store.  Id.

During the course of the supervisor=s
investigation, she took notes, photographed the reindeer, and obtained a
written statement from the employee who caused the accident.  Id.  She attached the photo, the employee=s statement, and the results of her investigation
to a Wal-Mart form entitled AReport
of Customer Incident.@  She also sent copies of the report to the
District Manager and claim management personnel.  Id.  According to the report, Johnson neither
threatened to sue nor indicated that Wal-Mart should pay any medical costs or
other damages.  After she completed the
report, the supervisor threw away her notes. 
Id.  

In the evening, after the accident occurred, Johnson=s neck and arm began to hurt and he had
trouble sleeping.  The next day, his
doctor prescribed muscle relaxers, pain killers, and physical therapy.  Id.  Six months later, Johnson was still in pain,
and he and his wife sued Wal-Mart.  Id.  About seventeen months after the accident,
Johnson underwent an anterior cervical discectomy and fusion. Id.   








During discovery, the Johnsons asked whether Wal-Mart still
possessed the reindeer that fell on him. 
Wal-Mart responded that they did not have possession of that reindeer,
but offered to provide a Areasonable
facsimile.@  Id.  The Johnsons refused to accept the
replacement, and the trial court granted their motion in limine prohibiting
Wal-Mart from introducing into evidence any Areasonable
facsimile@ of the
reindeer that fell on Johnson.  Id.  The trial court also granted the Johnsons= request for a spoliation instruction
to be given to the jury, which was based on Wal-Mart=s
failure to keep the reindeer.

The jury returned a verdict in the Johnsons= favor, finding that Wal-Mart was
negligent and awarding them $76,000.00.  Id.
at 721.  The trial court entered a
judgment on the jury=s
verdict, and Wal-Mart appealed.  The
court of appeals, with one justice dissenting, affirmed the trial court=s judgment.  See Wal-Mart Stores, Inc. v.
Johnson, 39 S.W.3d 729, 732 (Tex. App.BBeaumont
2001), rev=d,
106 S.W.2d 718, 724 (Tex. 2003).  

The supreme court began and ended its analysis with the issue
of duty, stating that A[b]efore
any failure to produce material evidence may be viewed as discovery abuse, the
opposing party must establish that the non-producing party had a duty to
preserve the evidence in question.  Johnson,
106 S.W.3d at 722; see also Trevino v. Ortega, 969 S.W.2d
950, 955 (Tex. 1998) (Baker, J., concurring). 
Such a duty arises only when a party knows or reasonably should know
that there is a substantial chance that a claim will be filed and that evidence
in its possession or control will be material and relevant to that claim.  Id.; see also Nat=l Tank Co. v. Brotherton, 851
S.W.2d 193, 204 (Tex. 1993) (holding that the objective test for when
litigation may be reasonably anticipated is when Aa
reasonable person would conclude from the severity of the accident and the
other circumstances surrounding it that there was a substantial chance@ for litigation).

Wal-Mart argued that it had no duty to preserve the reindeer
as evidence because it had no notice that they would be relevant to a future
claim and that it did not learn of the Johnsons=
claim until after all of the reindeer had been disposed of in the normal course
of business.  Johnson, 106
S.W.3d at 722.  Wal-Mart also argued that
their investigation revealed that Johnson had not been seriously injured and
never indicated that he might seek legal recourse.  Id.  The supreme court agreed that Anothing about the investigation or the
circumstances surrounding the accident would have put Wal-Mart on notice that
there was a substantial chance that the Johnsons would pursue a claim.@ 
Id.  It further
noted that the evidence was undisputed that neither Wal-Mart nor Johnson knew
on the day of the accident that his injury might be serious or that Johnson
might pursue legal action.  Id.
at 723.  Even after Johnson learned that
he had injured his neck, nothing in the record showed that he informed Wal-Mart
of his claim prior to filing suit or that Wal-Mart learned of his claim in any
other way.  Id.








Because the Johnsons failed to show that Wal-Mart disposed of
the reindeer after it knew, or should have known, that there was a substantial
chance there would be litigation and that the reindeer would be material to it,
the supreme court held that the trial court abused its discretion when it
submitted the spoliation instruction to the jury.  Id.    

In the instant case, Wright had no indication before he threw
away the log books and the strap that Hopper would file a claim against him or
that he would be sued.  He never received
any suggestions or signals from his own insurance company, Hopper, or Hopper=s counsel that litigation would be
forthcoming.  Furthermore, Swann and
Wright knew that Hopper had refused to receive medical treatment at the scene
of the accident and drove away in his own vehicle.  As a foundation for the submission of a
spoliation instruction, Hopper had to show that Swann or Wright knew, or should
have known, that there was a substantial chance there would be litigation and
that the log book and strap would be material to it.  When looking at the totality of the
circumstances in this case, Hopper has failed to show either. Accordingly, we
hold that the trial court did not abuse its discretion in refusing to grant
Hopper=s request
for a spoliation instruction.   Hopper=s first issue is overruled.

 

Factual Sufficiency

In his second issue, Hopper contends that the evidence is
factually insufficient to support the jury=s
finding of no negligence on the part of Swann because the great weight and
preponderance of the evidence demonstrates that Swann was negligent in failing
to 1) secure the load of steel coils  and
2) stop when he became aware of a problem with the cargo. 

Standard
of Review








When conducting a factual sufficiency review, this court must
consider all of the evidence, including any evidence contrary to the
verdict.  Plas-Tex. Inc. v. U.S.
Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989).  We must reverse on the basis of factual
insufficiency if the court=s
finding is so against the great weight and preponderance of the evidence as to
be manifestly unjust.  Pool v. Ford
Motor Co., 715 S.W.2d 629, 635 (Tex. 1986).  Findings of fact are the exclusive province
of the factfinder.  Bellefonte
Underwriters Ins. Co. v. Brown, 704 S.W.2d 742, 744 (Tex. 1986).  This court is not a factfinder and may not
pass on the credibility of the witnesses or substitute its judgment for that of
the trier of fact, even if a different conclusion could be reached on the
evidence.  See Herbert v. Herbert,
754 S.W.2d 141, 144 (Tex. 1988); Clancy v. Zale Corp., 705 S.W.2d
820, 826 (Tex. App.BDallas
1986, writ ref=d
n.r.e.).  When a party without the burden
of proof on an issue challenges the factual sufficiency of the evidence, the
question is whether the evidence in support of the complained-of finding is
insufficient.  Gooch v. Am. Sling
Co., 902 S.W.2d 181, 184 (Tex. App.BFort
Worth 1995, no writ).  An assertion that
the evidence is "insufficient" to support a fact finding means that
the evidence supporting the finding is so weak or the evidence to the contrary
is so overwhelming that the finding should be set aside and a new trial
ordered.  Garza v. Alviar,
395 S.W.2d 821, 823 (Tex. 1965).  When a
party challenges the factual sufficiency of the evidence on an issue where that
party has the burden of proof, the question is whether the factfinder's failure
to make a finding is against the great weight and preponderance of the
evidence.  Gooch, 902
S.W.2d at 184.

Negligence
in Failing to Secure the Load

Swann testified that he had a duty not to operate the truck
with an improperly secured load.  At the
time of trial, Swann had fifteen years of experience in driving and strapping
down loads on flatbed trucks.  When the
shipper loaded Swann=s
trailer, he placed five stacks of four coils down the center of the trailer,
each on a wooden crate.  Swann believed
that chains would be the best way to secure the coils; however, the shipper
told him that he could not use chains because chains would cut through the
plastic coating on the coils, which could cause them to rust.  Therefore, Swann used new or relatively new
nylon straps, rated at 12,000 pounds each, tying two straps over each stack of
coils, and two around the entire load, for a total weight rating of over
120,000 pounds.  The total weight of the
load of coils was 42,000 pounds.  Once
the straps were in place, he tightened them down with a ratchet bar.

Swann also placed rectangular rubber pads between the straps
and the metal coils in order to avoid contact between the straps and the coils
because the metal edge could cut the strap. 
He then covered the load with a tarp. 
Swann also said that this tie-down method met DOT regulations.

Every time Swann stopped, he performed Awalk-around@
inspections to make sure the straps were taut against the coils.  During his trip from Tennessee to Texas,
Swann never had a problem with the load and testified that if the pads had
slipped off, he would have been able to tell because the straps would not have
been taut.  








Swann testified that as he merged onto I-20 from Highway 287,
he noticed a little red car in the far left lane, and when he got close to one
of the exits off  I-20, the red car cut
all the way across the lanes in front of Swann. 
Swann then hit his brakes and cut the wheel hard to the left in order to
keep from hitting the red car.  Very
shortly thereafter, the coil fell off Swann=s
trailer.  Swann believed that the coil
came off his trailer when he had to take the evasive action to miss the car.
After the accident, Swann looked at the strap and thought that it broke at the
point where it was placed over the top of the coil.  When Swann brought the strap to Wright,
however, Wright testified that he thought the metal coil had cut the
strap.  

Lee Jackson, an accident reconstruction and investigation
teacher at the Fort Worth Police Academy, testified as an expert witness for
Hopper.  Jackson said that the
investigating officer properly cited Swann for failing to secure his load.  On cross-examination, Jackson agreed that the
investigating officer made no reference to the actual strapping or any
statement that the strapping was inadequate. 
In Jackson=s opinion,
even if the straps had been inspected ten minutes before the coil fell off and
the straps appeared fine, the failure to secure load citation was proper
because a coil fell off Swann=s
trailer.  However, Jackson admitted that
the nylon straps were adequate to secure the load.  Jackson also thought that it was reasonable
for a driver who has inspected a load, then drove 600 miles without incident,
to believe that the load was properly secured. 
Jackson further stated that he could not find any evidence that Swann
had improperly tied down the load.

The testimonies of Swann and Jackson, Hopper=s own expert, demonstrate that the jury=s finding that Swann was not negligent
in failing to properly secure his load was not so against the great weight and
preponderance of the evidence as to be manifestly unjust.  Hopper=s
second issue, as it pertains to negligence in failing to secure the load, is
overruled.

Negligence
in Failing to Stop After Swann Became Aware of a Problem With the Cargo

Hopper argues that the evidence shows that about one-half
mile before the accident site, Swann noticed that the tarp covering the steel
coils was loose.  Even though Swann knew
that the tarp was loose, Hopper contends that Swann continued westbound on I-20
for about 3,000 feet.  Hopper argues that
the evidence is factually insufficient to support the jury=s finding of no negligence against
Swann because Swann was negligent by failing to immediately stop after he knew
the tarp was loose.  








Hopper misstates the facts in the record.  Swann testified that A[w]hen
I noticed the tarp was flapping, the coil had already come off because it=s what tore my tarp loose.@ 
Swann also said that he had to continue the extra 3,000 feet after he
saw the tarp flapping because he had to negotiate traffic.  Nowhere in the record can we find any
evidence that the tarp had been flapping for some time before the coil came off
the back of Swann=s
trailer.  Accordingly, Hopper=s second issue, as it pertains to
negligence in failing to stop after Swann became aware of a problem with the
cargo, is overruled.

 

Conclusion

Hopper has failed to adduce, nor can we find, any evidence in
the record to show that Swann or Wright knew, or reasonably should have known,
that Hopper was going to file a claim against them or that he was going to
initiate litigation against them. 
Therefore, the trial court did not abuse its discretion when it denied
Hopper=s
spoliation instruction because no duty existed on the part of Swann or Wright
to preserve the log books or the strap. 
Furthermore, we hold that the evidence is factually sufficient to support
the jury=s finding
that Swann was not negligent.

Accordingly, the judgment of the trial court is affirmed.

 

 

 

    DIANE DEVASTO   

     Justice

 

 

Opinion delivered April 30, 2004.

Panel consisted of Worthen, C.J.,
Griffith, J., and DeVasto, J.

 

 

 

 

 

 

                                                                     (PUBLISH)











[1]
On appeal, Hopper does not challenge the entry
of a directed verdict in favor of Wright.