NUMBER 13-06-450-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


THE UNIVERSITY OF TEXAS PAN AMERICAN, Appellant,


v.


TONY AGUILAR AND KAY MARIE AGUILAR, Appellees.

 


On appeal from the 370th District Court of Hidalgo County, Texas.


 


MEMORANDUM OPINION



Before Justices Rodriguez, Garza, and Benavides


Memorandum Opinion by Justice Garza
 

This interlocutory appeal arises from the trial court's order denying the University of
Texas Pan American's ("UTPA") plea to the jurisdiction, no-evidence motion for summary
judgment, and motion to dismiss filed in response to Tony Aguilar and Kay Marie Aguilar's
personal injury and loss of consortium suit. (1) In its sole issue, UTPA argues that the trial
court erred in denying its plea to the jurisdiction because the Aguilars failed to establish the
jurisdictional facts required to waive governmental immunity under the Texas Tort Claims
Act ("TTCA"). We affirm.

I. Factual and Procedural Background

On March 5, 2001, Tony Aguilar, who was a student at UTPA, was hurrying to an
exam when he allegedly tripped on a water hose that was stretched across a campus
sidewalk. Tony, who suffers from polio, alleges he did not see the water hose and that he
suffered a broken knee as a result of the fall. Tony and his wife, Kay Marie, brought suit
against UTPA to recover damages, alleging negligence, premises liability, premises liability
special defect, and loss of consortium. (2) UTPA, arguing that the Aguilars failed to plead
facts sufficient to establish a waiver of governmental immunity under the TTCA, filed a plea
to the jurisdiction, a motion to dismiss, and a no-evidence motion for summary judgment. 
See Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021, 101.022 (Vernon 2006); see also Tex.
R. Civ. P. 166a(i). UTPA's motions were "heard" by submission. See Martin v. Martin,
Martin & Richards, Inc., 989 S.W.2d 357, 359 (Tex. 1998) (holding that a "hearing" does
not contemplate an oral presentation unless required by express language or context). 
The court denied UTPA's plea and motions. This appeal ensued. 

II. Standard of Review

We review a trial court's ruling on a jurisdictional plea de novo. Tex. Dep't of Parks
& Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004); Tex. Natural Res. Conservation
Comm'n v. IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002). Where, as in the present case, the
jurisdictional challenge implicates the merits of the plaintiff's cause of action and relevant
evidence is submitted by the parties, the trial court reviews the evidence to determine
whether a fact issue exists. Miranda, 133 S.W.3d at 227-28 (stating "after the state asserts
and supports with evidence that the trial court lacks subject matter jurisdiction, we simply
require the plaintiffs, when the facts underlying the merits and subject matter jurisdiction
are intertwined, to show that there is a disputed material fact regarding the jurisdictional
issue"). If the evidence creates a fact question regarding the jurisdictional issue, the trial
court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact
finder. Id. If the relevant evidence is undisputed or fails to raise a fact question on the
jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. 
Id. at 228. This procedure generally mirrors that of a summary judgment under rule of civil
procedure 166a(c), and the burden is on the government to meet the summary judgment
standard of proof. Id. This standard "protects the plaintiffs from having to 'put on their
case simply to establish jurisdiction.'" Id. (quoting Bland Indep. Sch. Dist. v. Blue, 34
S.W.3d 547, 554 (Tex. 2000)).

When reviewing a plea to the jurisdiction in which the pleading requirement has
been met and evidence has been submitted to support the plea that implicates the merits
of the case, we take as true all evidence favorable to the non-movant and indulge every
reasonable inference and resolve any doubts in his favor. Id. 

III. Waiver of Immunity 

 The issue here is whether the Aguilars' pleadings invoked the waiver of
governmental immunity under sections 101.021 and 101.022 of the TTCA. Tex. Civ. Prac.
& Rem. Code Ann. §§ 101.021, 101.022. Generally, the State, its agencies, and its
subdivisions enjoy sovereign immunity from tort liability unless that immunity has been
waived. County of Cameron v. Brown, 80 S.W.3d 549, 554 (Tex. 2002). The TTCA
provides a limited waiver of sovereign immunity in three general areas: (1) injury caused
by an employee's operation or use of a motor-driven vehicle or motor-driven equipment;
(2) injury caused by a condition or use of tangible personal or real property; and (3) injury
caused by premises defect. Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021, 101.022(a);
Brown, 80 S.W.3d at 554. A plaintiff bears the burden of establishing a waiver of immunity
under the TTCA. See Dallas Area Rapid Transit v. Whitley, 104 S.W.3d 540, 542 (Tex.
2003). 

 The parties do not dispute that the injuries raised in the Aguilars' pleadings were the
result of an alleged premises defect, and they have briefed the issue accordingly. 
However, UTPA does dispute whether the Aguilars have established the jurisdictional facts
required to waive governmental immunity under the TTCA. With respect to a premises
defect, the TTCA limits the governmental duty owed to a claimant to "the duty that a private
person owes to a licensee on private property, unless the claimant pays for the use of the
premises." Tex. Civ. Prac. & Rem. Code Ann. § 101.022(a); see also State v. Tennison,
509 S.W.2d 560, 562 (Tex. 1974); Tex. Dep't of Family & Protective Servs. v. Atwood, 176
S.W.3d 522, 532 (Tex. App.-Houston [1st Dist.] 2004, pet. denied). (3) This duty entails a
responsibility not to injure the licensee through willful, wanton, or grossly negligent conduct. 
State Dep't of Highways & Pub. Transp. v. Payne, 838 S.W.2d 235, 237 (Tex. 1992); City
of Mission v. Cantu, 89 S.W.3d 795, 808 (Tex. App.-Corpus Christi 2002, no pet.). The
exception to this rule is that, where a licensor has actual knowledge of a dangerous
condition, and the licensee does not, the licensor then has the duty either to warn the
licensee or to make the condition reasonably safe. Payne, 838 S.W.2d at 237. For liability
to arise under the exception, the claimant must prove the State's actual knowledge of the
dangerous condition in question. See Tennison, 509 S.W.2d at 562. Actual knowledge
may be established by circumstantial evidence. See City of San Antonio v. Rodriguez, 931
S.W.2d 535, 537 (Tex. 1996) (per curiam); Palais Royal, Inc. v. Gunnels, 976 S.W.2d 837,
844 (Tex. App.-Houston [1st Dist.] 1998, pet. dism'd by agr.); Simons v. City of Austin, 921
S.W.2d 524, 528 n.2 (Tex. App.-Austin 1996, writ denied). Constructive knowledge of the
danger is insufficient. Tennison, 509 S.W.2d at 562.

 Our inquiry focuses on whether the pleadings and evidence submitted here creates
a fact issue as to whether UTPA breached its duty to exercise ordinary care to warn of, or
to make reasonably safe, the allegedly dangerous condition presented by the water hose
across the sidewalk. To establish a breach of this duty, a licensee must show that: (1) a
condition of the premises created an unreasonable risk of harm; (2) the owner actually
knew of the condition; (3) the licensee did not actually know of the condition; (4) the owner
failed to exercise ordinary care to protect the licensee from danger; and (5) the owner's
failure was the proximate cause of injury to the licensee. Id. 

 In the present case, the elements attacked by UTPA in its plea to the jurisdiction are 
(1) whether placing a water hose across the sidewalk was a dangerous condition and (2)
UTPA's actual knowledge of the condition. 

IV. Analysis 

 The evidence relevant to the trial court's subject matter jurisdiction is disputed. 
UTPA argues that it did not have actual knowledge that stretching a water hose across a
sidewalk could create a dangerous condition or of the water hose on the sidewalk. 

 In support of its contention that it did not know that stretching the water hose across
a sidewalk created an unreasonable danger, UTPA relied on the deposition testimony of
Richard Costello, UTPA's Director of Health and Safety. Costello testified that, in the
previous five years, there had been no other incidents on campus involving pedestrians
tripping on water hoses. Costello opined that placing a water hose across a side walk does
not present an unreasonable risk. In addition, UTPA sought support in the testimony of
Oscar Villarreal, UTPA's Assistant Director for Facilities, Operations and Maintenance. 
Villarreal testified that there were no rules, standards, or industry guidelines for the
placement or use of water hoses and that the grounds keepers' use of water hoses had
never been a problem on the UTPA campus. 

 In response, the Aguilars argued that UTPA had actual knowledge of the dangerous
condition created by the water hose being placed across the sidewalk. The Aguilars further
submitted UTPA's safety manual as evidence that UTPA knew that stretching the water
hose across the sidewalk presented a dangerous condition. The Aguilars argued that
UTPA's "own safety manual recognizes the hazardous nature of placing obstacles across
passageways which would trip people and cause accidents." They contended that, through
the adoption of this set of rules for itself, the State "has both acknowledged the
dangerousness of such a practice and also that it was aware that such a practice would
likely cause injury to those on its property." The relevant guidelines found in the safety
manual provide: "Floors and other walking areas should be kept unobstructed." "Corridors
. . . are the primary means of egress. . . . Keep all means of egress free from obstructions."
"Do not place hazardous equipment o[r] materials in areas that are used for egress."
"Equipment should be arranged so that electrical and telephone cords do not present
tripping hazards." And "Flexible cords should never cross paths of travel unless suitably
protected to avoid damage and the creation of tripping hazards." The manual also includes
a statement that slips, trips, and falls pose safety issues in the workplace environment. 

 Courts have defined "dangerous condition" as a defect that constitutes an
unreasonable risk of harm such that a person using ordinary care could not encounter such
condition with safety. See, e.g.,Tennison, 509 S.W.2d at 562. The determination of
whether a particular condition poses an unreasonable risk of harm is generally fact specific. 
In general, reasonableness determinations are highly fact intensive and involve issues well
suited for a jury. See Reliable Consultants, Inc. v. Jaquez, 25 S.W.3d 336, 342 (Tex.
App.-Austin 2000, pet. denied). Here, UTPA's own safety manual creates a fact issue
regarding its knowledge of the danger posed by placing an object, whether the object is a
water hose or flexible cord, across a walkway. Given that a fact issue exists, it would have
been improper for the trial court to grant UTPA's plea on this ground.

 UTPA also argues that it proved it did not have actual knowledge of the dangerous
condition itself (i.e., that the water hose was stretched across the walkway). In support of
this contention, UTPA again relied on Costello's testimony. Costello stated that he was
notified of the accident the day after it happened and that he went to the specific location
to look for the water hose but did not locate a hose at that time. Costello questioned the
grounds keepers but none of them could remember watering any plants or being in that
general vicinity. UTPA also attached Tony's deposition testimony wherein he stated that
he did not see any UTPA employees using the water hose, did not see who hooked up the
hose to the spigot, did not see the location of the other end of the hose, and did not see
anyone touching the hose. 

 The Aguilars responded that UTPA did in fact have actual knowledge of the
dangerous condition. As evidence, the Aguilars submitted the deposition testimony of
Villarreal who testified that UTPA uses an automatic sprinkler system throughout the
campus. However, Villarreal stated that, because the sprinkler system does not reach all
areas of the campus, the grounds keepers have to use water hoses to hand water some 
areas. Villarreal testified that he has seen the water hoses hooked up to the faucets
(spigots) on the sides of the buildings. Villarreal did not know whether water hoses were
used in the area where Tony tripped. He stated that although the grounds keepers are not
the only ones who could have had a water hose in that area, it is possible that the plumbing
crews and the preventative maintenance crews could have had a hose out in that area. 
Villarreal testified that UTPA does not have any guidelines or rules regulating the proper
use of water hoses or prohibiting the stretching of a water hose across a sidewalk. The
Aguilars also relied on Costello's deposition testimony that the grounds keepers sometimes
use water hoses to water the trees and that he was aware that grounds crews stretched
the water hoses across walkways. 

 When we "indulge every reasonable inference and resolve any doubts in [the
Aguilars'] favor," we must conclude that a fact question remains regarding whether UTPA
had actual knowledge of the dangerous condition. See Miranda, 133 S.W.3d at 227-28;
Rodriguez, 931 S.W.2d at 537. The Aguilars' evidence, albeit circumstantial, constitutes
some evidence that UTPA knew of the dangerous condition. Palais Royal, 976 S.W.2d at
844; Simons, 921 S.W.2d at 528 & n.2 (providing that testimony of two experts who
testified that partition was dangerous and city "must have known" of the danger constitutes
circumstantial evidence of city's actual knowledge); see Rawlings v. Angelo State Univ.,
648 S.W.2d 430, 433-34 (Tex. App.-Austin 1983, writ ref'd n.r.e.). We therefore overrule
UTPA's issue.

 Because there are questions of fact pertinent to the jurisdictional issue, we conclude
the trial court did not err in denying UTPA's plea to the jurisdiction, motion to dismiss, and
no-evidence motion for summary judgment. Accordingly, we affirm the order of the trial
court.


 

 DORI CONTRERAS GARZA,

 Justice


Memorandum Opinion delivered and 

filed this the 1st day of March, 2007.

1. UTPA also asserted that the trial court lacked jurisdiction as a basis for its motion to dismiss and no-evidence motion for summary judgment. If a trial court denies the governmental unit's claim of no jurisdiction,
whether it has been asserted by a plea to the jurisdiction, a motion for summary judgment, or otherwise, the
Legislature has provided that an interlocutory appeal may be brought. See Tex. Civ. Prac. & Rem. Code Ann.
§ 51.014(a)(8) (Vernon Supp. 2006); San Antonio State Hosp. v. Cowan, 128 S.W.3d 244, 245 n.3 (Tex.
2004). 
2. The Aguilars later amended their petition to allege only ordinary premises defect.
3. The Aguilars alternatively contended that Tony was an invitee because he paid for the use of the
property through his tuition and fees and ask us to conduct our review in light of the duty owed to an invitee. 
UTPA insists that Tony's status was only that of a licensee because he did not pay for the use of the property. 
Tex. Civ. Prac. & Rem. Code Ann. § 101.022 (Vernon 2006). Given our disposition, we need not reach this
issue. See Tex. R. App. P. 47.1.


 A premises owner owes a duty to an invitee "to exercise reasonable care to protect against danger
from a condition on the land that creates an unreasonable risk of harm of which the owner or occupier knew
or by the exercise of reasonable care would discover." CMH Homes, Inc. v. Daenen, 15 S.W.3d 97, 101(Tex.
2000); Wal-Mart Stores, Inc. v. Gonzalez, 968 S.W.2d 934, 936 (Tex. 1998). In a premises liability suit, an
invitee plaintiff must prove the following four elements: (1) actual or constructive knowledge of some condition
on the premises by the owner/operator; (2) that the condition posed an unreasonable risk of harm; (3) that
the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and (4) that the
owner/operator's failure to use such care proximately caused the plaintiff's injuries. See Gonzalez, 968
S.W.2d at 936. 


 Assuming, without deciding, that the duty UTPA owed to Tony was that owed to an invitee, our result
would be the same because fact issues remain regarding whether stretching the water hose across the
sidewalk posed an unreasonable risk of harm and whether UTPA had actual or constructive (in terms of an
invitee) knowledge of the condition.